# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERICH HALBERT, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | Civil Action Number |
| **CREDIT SUISSE AG, *et al.*,** | ) | **2:18-cv-00615-AKK** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Erich, Sherri, and John Halbert ("the Halberts") bring this action against Credit Suisse AG and Janus Index & Calculation Services, LLC ("JICS") alleging federal and state securities violations and tortious conduct. Docs. 1; 45. The Defendants have jointly moved to transfer venue to the S.D.N.Y. under 28 U.S.C. § 1404(a) or, alternatively, to stay the action pending the resolution of similar cases in the S.D.N.Y. under the first-filed rule. Doc. 23. The motion, which is fully briefed and ripe for review, *id.*; docs. 24, 30, 31, is due to be denied.

## I.    SUMMARY OF FACTS AND PROCEDURAL HISTORY

The Halberts allege that they suffered significant losses after investing in Credit Suisse's VelocityShares Daily Inverse VIX Short Term exchange traded notes ("XIV ETNs") due to a precipitous drop in the securities' value on February

1

5, 2018. Doc. 45 at 1-2. According to the Halberts, Credit Suisse and JICS caused them to suffer these losses by manipulating and failing to disclose the published estimates of the XIV's value on and before February 5, 2018. *Id*. ¶¶ 41-42. Allegedly, Credit Suisse intentionally issued false and misleading offering documents in connection with the XIV ETNs, failed to disclose that it was engaging in activities that inflated their value, failed to update the estimated value of the XIV while its value was dropping, and then ended trading on the XIV in order to realize a profit at investors' expense. *Id*. ¶¶ 8-49. Based on these contentions, the Halberts assert claims against Credit Suisse and JICS for alleged violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as common law claims of negligence, wantonness, fraudulent misrepresentation, negligent misrepresentation, and fraudulent suppression, and assert claims for alleged breach of contract and violations of § 11 of the Securities Act, 15 U.S.C. § 77k, and the Alabama Blue Sky Law, Ala. Code § 8-6-19(a)(2), solely against Credit Suisse. Docs. 1; 45.

Relevant to the pending motion, in addition to the Halberts' lawsuit, other investors filed three putative class actions against Credit Suisse AG, JICS, and six other defendants in the S.D.N.Y. to recover for their losses from the collapse of Credit Suisse's XIV on behalf of themselves and other investors, including the Halberts. *See Chahal v. Credit Suisse Group AG et al.*, No. 1:18-cv-2268-AT-SN

(S.D.N.Y. Mar. 14, 2018), ECF Nos. 1, 74; *Eisenberg v. Credit Suisse Group AG et al.*, No. 1:18-cv-2319-AT-SN (S.D.N.Y. Mar. 15, 2018); *Qiu v. Credit Suisse Group AG et al.*, No. 1:18-cv-4045-AT-SN (S.D.N.Y. May 4, 2018). These actions were subsequently consolidated by Magistrate Judge Sarah Netburn, and the plaintiffs have filed a consolidated amended complaint alleging violations of the Securities and Exchange Acts. *See Set Capital LLC et al. v. Credit Suisse Group AG*, No. 1:18-cv-2268-AT-SN (S.D.N.Y. Aug. 20, 2018), ECF No. 82 (hereinafter "the New York action"). The defendants in the New York action have moved to dismiss, *id.*, ECF. Nos. 100, 101, 105, and, to date, the court has not certified a class.

## II.    ANALYSIS

The Defendants raise two points in their pending motion. First, they contend that the balance of factors under 28 U.S.C. § 1404(a) favor a transfer to the S.D.N.Y. Alternatively, they contend that the court should stay this case pending resolution of the New York action based on the first-filed rule. The court addresses each of these contentions in turn.

### A. <u>Transfer of Venue Under 28 U.S.C. § 1404(a)</u>

Section 1404(a) allows a district court, "[f]or the convenience of parties and witnesses, in the interest of justice," to "transfer any civil action to any other district . . . where it might have been brought . . . ." 28 U.S.C. § 1404(a). It is

undisputed that venue would be proper in the S.D.N.Y.: the alleged violations of federal securities laws occurred in this district, Credit Suisse AG resides in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district. *See* docs. 45, 24-2; 15 U.S.C. § 77v (any civil action under the Securities Act "may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein"); 15 U.S.C.A. § 78aa (any civil action under the Exchange Act "may be brought in the district wherein any act or transaction constituting the violation occurred . . . or in the district wherein the defendant is found or is an inhabitant or transacts business"); 28 U.S.C. § 1391(b)(2) (venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). Therefore, the only issue is whether the Defendants have met their burden of showing that the balance of § 1404(a) factors justifies a transfer in this case.[1] As explained below, the Defendants have failed to meet this burden.

---

[1] The court must weigh the following factors in reaching this determination:

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a

## 1. Factors Supporting Transfer

Only three of the relevant factors affirmatively favor transfer: the convenience of the witnesses, the availability of process to compel the attendance of unwilling witnesses, and the location of relevant documents and relative ease of access to sources of proof. More specifically, most of the potential witnesses concerning the allegedly illegal conduct appear to be located either in New York or Darien, Connecticut, *see* docs. 24-1 ¶¶ 4-6; 24-2 ¶¶ 5-10, and it seems the only potential witnesses in Alabama are the Halberts, *see* docs. 45; 24-1 ¶¶ 7-9; 24-2 ¶ 5. Likewise, as the Defendants note, the location of potential witnesses, which also includes Colorado, likely places them beyond the reach of this court's subpoena power. *See* docs. 24 at 8; 24-1 ¶¶ 9-10; 24-2; Fed. R. Civ. P. 45(c). Furthermore, because the offering documents at issue were prepared in New York, Credit Suisse's only U.S. branch is in New York, and JICS's principal place of business is Darien, Connecticut, the location of relevant documents and access to sources of proof also appears to favor transfer. *See* docs. 24-1 ¶¶ 4, 6; 24-2 ¶¶ 5-10.

Nevertheless, the circumstances of this case mitigate the weight of these factors. For instance, the significance of the convenience of witnesses factor is diminished where, as here, most of the potential witnesses, "although in another

---

plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

district, are employees of a party and their presence at trial can be obtained by that party." *See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328–29 (M.D. Fla. 2010) (citation omitted). Furthermore, because the Halberts are willing to travel to New York, Connecticut, and Colorado to depose the Defendants' employees, *see* doc. 30 at 11, the convenience of the witnesses does not weigh heavily in favor of transfer. Similarly, the availability of process is of less significance here, where there is no indication the potential witnesses would be unwilling to appear. *See F.D.I.C. ex rel. Citizens State Bank v. Fedorov*, No. 10-20912-Civ., 2011 WL 2110830 (S.D. Fla. May 26, 2011) (finding this factor did not support transfer where "[n]either of the parties has identified any specific witness who would be unwilling to appear and may require the court's subpoena power."). Finally, although many of the relevant documents and other evidence are located in or around New York, this factor is less significant in the absence of any contention by the Defendants that they face substantial difficulty in producing relevant documents and given "the predominance of electronic discovery in the modern era." *Weintraub v. Advanced Correctional Healthcare, Inc.*, 161 F. Supp. 3d 1272, 1283 (N.D. Ga. 2015); *see Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1340 (S.D. Fla. 2008) ("Defendant has not demonstrated that there is any particular difficulty in producing the materials or relevant documents . . .").

## 2. Neutral Factors and Factors Militating Against Transfer

By contrast, the remaining factors are either neutral or militate against transfer. To begin, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations," *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 261 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.3d 610, 616 (5th Cir. 1981)), and this choice receives "greater deference when the plaintiff has chosen the home forum," as the plaintiffs have done in this case, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 266 (1981) (citation omitted). Next, the presence of six state common law claims and a claim for violations of Alabama's Blue Sky Law, doc. 45 ¶¶ 67-90, also supports greater deference to the Halberts' choice of forum and disfavors transfer. *See Trafalgar Capital Specialized Inv. Fund (in Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1290 (S.D. Fla. 2012) ("[W]here there are state law claims, the forum's familiarity with the governing law supports retention of the action." (citation and quotation marks omitted)).

Moreover, there is "no single locus of the operative facts" in this case. *See Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1166 (S.D. Fla. 2017) (citation omitted). Indeed, no single federal district qualifies "as the place where events and actors material to proving liability are located." *Id*. at 1165-66 (citation omitted). Instead, (1) the trading and sales decisions for the alleged securities violations were made by Credit Suisse personnel "located in or around New York," (2) the

allegedly fraudulent offering documents and pricing supplement were prepared in New York, (3) substantially all of JICS's employees involved in calculating and updating the XIV ETNs' indicative values were located in Darien, Connecticut, and (4) the Halberts purchased the XIV ETNs, which were available to investors nationwide, in Alabama. Docs. 24-1 ¶¶ 5, 6; 24-2 ¶¶ 6-8; 45 ¶ 46. In other words, "this factor is neutral and does not support a transfer." *Gubarev*, 253 F. Supp. 3d at 1166 (citation omitted).

The relative means of the parties is also a neutral factor here, where there is no evidence concerning the parties' financial positions. *See DocRX, Inc. v. DOX Consulting, LLC*, 738 F. Supp. 2d 1234, 1256 n.20 (S.D. Ala. 2010) (finding that this factor "appears to be a wash" where the defendants provided no evidence of their own financial positions or the plaintiff's). And, critically, either forum would prove inconvenient for one party—this district is inconvenient for the Defendants, *see* docs. 24-1, 24-2, and the S.D.N.Y. would prove similarly inconvenient for the Halberts. "[W]hen a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum should not be disturbed." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328–29 (M.D. Fla. 2010). Finally, in light of all of the circumstances in this case, trial efficiency and the interests of justice counsel against transfer.

Therefore, because the Plaintiffs have chosen their home forum, and the Defendants have not shown that the interests of convenience so heavily favor the S.D.N.Y. as to override the Plaintiffs' choice, *see Robinson*, 74 F.3d at 261, the motion to transfer is due to be denied.

### B. <u>The First-Filed Rule</u>

The Defendants also move in the alternative for a stay under the first-filed rule. "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013) (citation omitted). This rule "not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Id.* To determine whether the first-filed rule applies, courts may consider: "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Goldsby v. Ash*, No. 2:09-CV-975-TFM, 2010 WL 1658703, at *2 (M.D. Ala. Apr. 22, 2010) (quoting *Fuller v. Abercrombie & Fitch Stores, Inc.,* 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005)). Importantly, courts apply this rule in order "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform

result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985).

It is undisputed that the consolidated New York cases were filed prior to this action. *See Chahal v. Credit Suisse Group AG et al.*, No. 1:18-cv-2268-AT-SN (S.D.N.Y. Mar. 14, 2018), ECF Nos. 1, 74; *Eisenberg v. Credit Suisse Group AG et al.*, No. 1:18-cv-2319-AT-SN (S.D.N.Y. Mar. 15, 2018), ECF No. 1; *Qiu v. Credit Suisse Group AG et al.*, No. 1:18-cv-4045-AT-SN (S.D.N.Y. May 4, 2018), ECF No. 1. There are also overlapping issues between the New York action and the present case: for instance, both actions assert claims arising under federal securities laws based on alleged misrepresentations in the XIV ETNs' offering documents and alleged losses from declines in value that occurred on February 5, 2018. *Compare* Doc. 45 ¶¶ 16-49, 53, 64 with *Set Capital LLC et al. v. Credit Suisse Group AG*, No. 1:18-cv-2268-AT-SN (S.D.N.Y. Aug. 20, 2018), ECF No. 82 ¶¶ 215-228, 271, 274. Indeed, the Halberts' Amended Complaint expressly incorporates by reference nearly all of the factual allegations from the consolidated New York action. *See* doc. 45 at 2 n.1 (incorporating the allegations in paragraphs 1-19 and 50-269 of the amended complaint in the New York action).

However, "[a] first-filed analysis looks to the character of the suits and the parties to the suits, not simply to the similarity of issues without regard to the identity of the parties asserting them and their asserted rights as presented in the

initial lawsuit." *Collegiate Licensing Co.*, 713 F.3d at 79. Although the actions share two overlapping defendants—Credit Suisse AG and JICS—the plaintiffs differ: in this case, the Halberts sue as individuals, whereas the plaintiffs in the New York action seek to represent a class of similarly situated individuals. Even though the putative class in the New York action includes the Halberts, in the absence of certification under Federal Rule 23, the court cannot conclude reasonably that the plaintiffs in the two cases share an identity. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties. What does have this effect is a class action approved under Rule 23."). Applying the first-filed rule at this juncture would not avoid duplicative litigation or "piecemeal resolution of issues that call for a uniform result." *See W. Gulf Mar. Ass'n*, 751 F.2d at 729; *Barnett v. Alabama*, 171 F. Supp. 2d 1292, 1296 (S.D. Ala. 2001) ("A principal concern behind the 'first filed' rule . . . is preventing duplication of effort and incompatible rulings."). Moreover, if the court in New York ultimately decides against certifying a class, granting a stay in this case would end up causing an unnecessary delay of this case's resolution. And, even if the class is certified, the Halberts may decide to opt out and proceed with their own claims individually, *see* Fed. R. Civ. P. 23(c)(2)(B), further undermining the contention that the conservation of judicial resources justifies granting the stay. Finally, because the Halberts assert seven

claims under Alabama law that are distinct from the New York action, disposition of the New York case on its merits would not necessarily resolve the state law issues in the present case. Thus, the first-filed rule is inapplicable here, where the parties and issues do not sufficiently overlap to justify its application.

## CONCLUSION AND ORDER

For the foregoing reasons, the court finds that neither a transfer of venue nor a stay of the proceedings is warranted in this case. The balance of factors under 28 U.S.C. §1404(a) does not favor transfer and the first-filed rule does not apply because this case is not sufficiently similar to the New York action. Accordingly, the Defendants' motion to transfer or stay, doc. 23, is **DENIED**.

**DONE** the 15th day of December, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE